U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUN - 9 2021

CLERK U.S. DISTRICT COURT
By: _____
                    Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 4:21-MJ-414 -BP |
| GABRIELA VILLAGOMEZ FRANCO | |

### CRIMINAL COMPLAINT

I, Joseph Peres, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

**Gabriela Villagomez Franco** has violated 21 U.S.C. §§ 841(a)(1), that is, possession with intent to distribute methamphetamine, a Schedule II controlled substance.

### I. Introduction

1. My name is Joseph Peres, and I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and I am empowered by law to conduct criminal investigations and to make arrests for federal felony offenses. I am a Special Agent with the Drug Enforcement Administration of the United States Department of Justice, and have been so employed since February 2010. I am currently assigned to the Dallas Field Division Office. In that capacity, I investigate violations of the Controlled Substances Act (Title 21, United States Code, Section 801, et seq.). I have conducted complex investigations, and participated in numerous arrests and search warrants. I have written affidavits in support of court authorized federal warrants and orders for search warrants, GPS tracking of telephones and vehicles, pen registers, and T-III wire intercepts.

Criminal Complaint - Page 1

I have conducted interviews of drug traffickers, which has provided me with a greater understanding of the methods by which drug trafficking organizations operate. I am familiar with common methods of investigating drug trafficking and manufacturing organizations, and have become familiar with the methods of operation, including, but not limited to their methods of importing, exporting, storing, concealing, and packaging drugs and drug proceeds; their methods of transferring and distributing drugs; their use of cellular telephones and telephone; their use of numerical codes, code words, and counter surveillance; and other methods of avoiding detection by law enforcement. Through my training and experience, I can identify illegal drugs by sight, odor, and texture.

## II. Background

2. My knowledge of the facts alleged in this affidavit arise from my personal participation and observations in this investigation, my interviews of informants, and my review of reports prepared by investigators of the DEA Dallas Field Division and other participating law enforcement officers. Since this affidavit is limited to establishing probable cause, I have not included every fact known to me and other investigators. Rather, I am only submitting the facts necessary to establish probable cause that **Gabriela Villagomez Franco** possessed with the intent to distribute methamphetamine.

## II. Probable Cause

3. Beginning in February 2021, I began conducting an investigation regarding a Mexico-based methamphetamine trafficking and money laundering organization operating in the Fort Worth, Texas area. Based on the investigation to date, I know there

are methamphetamine sources of supply and money launderers based in Mexico coordinating the shipment of methamphetamine to the Fort Worth area, directing production, storage, and distribution of the methamphetamine, arranging and coordinating collection of drug proceeds resulting from the distribution, and directing the laundering of those illicit proceeds to Mexico.

4. Agents have used a myriad of investigative techniques in this investigation to seize over $370,000 in drug proceeds and arrest and indict three conspirators in the Northern District of Texas, Fort Worth Division.

5. During the course of the investigation, agents cultivated a Confidential Source (CS) with knowledge of the inner-workings of the organization and communication with controlling members of the organization in Mexico directing some of the illicit activities occurring in the Fort Worth area. The CS' assistance in this investigation directly led to the identification of two co-conspirators who have been indicted and arraigned in the Northern District of Texas, Fort Worth Division, and the seizure of over $200,000 in drug proceeds and a firearm. The CS is assisting DEA Dallas for charging considerations in the same investigation and immigration status assistance. The CS has been deemed reliable and credible.

6. In April 2021, the Mexico-based superiors contacted the CS and stated a U.S.-based member of the same organization described above was in possession of drug proceeds. Mexico-based superiors provided the telephone number of that U.S. based member, which was 214-417-2836.

7. Later that month, agents obtained a search warrant authorizing GPS data concerning the telephone. Agents used GPS data to identify the carrier of the telephone, later further identified as **Gabriela Villagomez Franco**, and her residence at 13980 Peyton Drive, Apartment #203, Dallas, Texas.

8. In the following weeks, I was in contact with several other members of DEA enforcement groups, who were provided **Villagomez Franco's** telephone number by undercover agents, confidential sources, and cooperating defendants, stating **Villagomez Franco** was a wholesale methamphetamine source of supply operating at under the direction of Mexico-based superiors.

9. On June 7, 2021, agents established surveillance at **Villagomez Franco's** residence, 13980 Peyton Drive, Apartment #203, Dallas, Texas. Agents observed **Villagomez Franco's** boyfriend, identified here as D.G.F., exit the residence and get into the driver's seat of a Ford F-150 in the parking lot. D.G.F. drove the vehicle to the stairwell of the residence and exited the vehicle, going back inside the residence.

10. A short time later, **Villagomez Franco** and D.G.F. exited the residence with two young children, approximately 3 and 4 years old. D.G.F. and **Villagomez Franco** got into the driver and passenger seats of the Ford F-150, respectively, and the two children in the back seats. The departed in the Ford F-150, followed by agents. Agents, assisted by a Texas Department of Public Safety marked Trooper, observed a traffic violation conducted by the vehicle.

11.     The Trooper conducted a traffic stop of the vehicle, which was executed without incident. After the initial traffic stop and interactions between the Trooper and the vehicle occupants, I arrived at the scene of the traffic stop.

12.     I directed a Spanish-speaking Task Force Officer to call **Villagomez Franco's** previously identified telephone and directed her to answer the call when her phone rang. She answered the call and was asked for consent to search her residence on Peyton Drive. She provided consent to search the residence.

13.     While at the traffic stop, I asked D.G.F., through an interpreter, for consent to search the residence as well, which he provided. I asked D.G.F. if there were any drugs, money, or weapons inside the residence. He stated there was liquid methamphetamine inside the residence.

14.     D.G.F. stated **Villagomez Franco** was working with Mexico-based drug cartel members to distribute methamphetamine.

15.     D.G.F. and **Villagomez Franco** subsequently provided written consent to search the residence. They stated there were two additional children, approximately ages 10 and 7, inside the residence, who were **Villagomez Franco's** from a previous relationship. Additionally, there was another male occupant renting a bedroom of the apartment from them, but he had no knowledge of the narcotics inside the residence and no involvement in the conspiracy.

16. Agents conducted a consent search of the residence and identified the individuals described by **Villagomez Franco** inside, including the two children in the south bedroom.

17. In the south bedroom bathroom, agents located 6 five-gallon plastic gasoline containers on the floor. Agents conducted a field test of the substance contained therein of each of the containers, all of which tested positive for the presence of methamphetamine. It was determined the total amount of the liquid methamphetamine was 95,735 milliliters (approximately 95 kilograms of methamphetamine).

18. In the same bathroom's closet, agents located approximately 6 kilograms of methamphetamine in a finalized crystal state. In the south bedroom closet, agents located a bag containing several large rubber-banded bundles of U.S. Currency.

19. Agents read **Villagomez Franco** her *Miranda* Warnings in Spanish, and she agreed to speak with agents. **Villagomez Franco** stated she was working with Mexico-based drug cartels to distribute methamphetamine to assist a family member who was indebted to the drug cartel.

20. **Villagomez Franco** stated she had received the liquid methamphetamine the night before and was going to be directed by Mexico-based superiors who and when to deliver it.

21. **Villagomez Franco** stated the U.S. Currency was provided to her by the same individual (unidentified) who provided the liquid methamphetamine. **Villagomez Franco** stated the crystal methamphetamine located in the bathroom closet was provided

to her by an unidentified male and was meant for distribution to Dallas-Fort Worth area customers at the direction of Mexico-based superiors.

22.     **Villagomez Franco** stated she had been supplied crystal methamphetamine by the same individual on several prior occasions, which she had previously distributed at the direction of her Mexico-based superiors.

23.     **Villagomez Franco** stated she was a citizen of Mexico and an illegal alien in the United States. **Villagomez Franco** stated D.G.F. was not involved in the criminal activity. **Villagomez Franco** was placed under arrest and transported to Ellis County (Texas) jail and placed on a federal hold, pending an arrest warrant and transfer to federal custody. An Immigration and Customs Enforcement (ICE) detainer was placed on her while in custody.

24.     Based on my training and experience, as well as my familiarity with this investigation and other similar investigations I've conducted regarding Mexico-based drug trafficking organizations operating in the United States, I know it is common for the organizations to be led and directed by their Mexico-based superiors. By design, these organizations are often compartmentalized, wherein the co-conspirators have limited job responsibilities within the organization to mitigate risk of loss and exposure during enforcement action. Based on my training and experience, including this investigation, I believe **Villagomez Franco** was a member of this vast criminal enterprise distributing multi-kilogram quantities of methamphetamine to Dallas-Fort Worth customers. Additionally, I believe **Villagomez Franco** was a trusted conspirator who was responsible

for securing and storing a large quantity of liquid methamphetamine awaiting transfer to a methamphetamine recrystallization laboratory operator for production into its final crystal methamphetamine state. I believe once that was completed, **Villagomez Franco** would be, at least in part, responsible for the distribution of the methamphetamine to customers in multi-kilogram quantities and collection of drug proceeds from those illicit sales.

25. Based on the investigation to date, agents believe **Villagomez Franco** possessed with the intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1), within the Northern District of Texas.

### IV. Conclusion

26. Based upon the information contained in this affidavit, I believe that there is probable cause to believe that **Gabriela Villagomez Franco** has violated 21 U.S.C. § 841(a)(1), that is, possession to intent distribute methamphetamine, a Schedule II controlled substance.

Joseph Peres, Special Agent
Drug Enforcement Administration

Sworn to me, and signed by me pursuant to Fed.R.Crim.P. 4.1 on this 9TH day of June, 2021 at 2:36 a.m./p.m. in Fort Worth, Texas.

HAL R. RAY, JR
UNITED STATES MAGISTRATE JUDGE